976 F.2d 726
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
 1108 K STREET ASSOC., Plaintiff-Appellant,
v.
Charles A. JEWETT, Defendant & Third Party Plaintiff-Appellee,
v.
James E. Farr; Margaret D. Held; John Doe Corporation;
John J. Pohanka; Roger Theil; Farr Investment
Corporation; John Doe, Third Party Defendants,
H R Corporation, formerly known as Brewood Corporation,
Claimant. 1108 K Street Associates, Plaintiff-Appellee,
v.
Charles A. Jewett, Defendant & Third Party Plaintiff-Appellant,
v.
James E. Farr; John J. Pohanka; Farr Investment
Corporation, Third Party Plaintiffs-Appellees,
and Margaret D. Held; John Doe Corporation; Roger Theil;
John Doe, Third Party Defendants,
H R Corporation, formerly known as Brewood Corporation,
Claimant. 1108 K Street Associates, Plaintiff-Appellee,
v.
Charles A. Jewett, Defendant & Third Party Plaintiff-Appellant,
v.
James E. Farr; John J. Pohanka; Farr Investment
Corporation, Third Party Defendants-Appellees,
and Margaret D. Held; John Doe Corporation; Roger Theil;
John Doe, Third Party Defendants,
 
 Nos. 91-1548, 91-1627, 91-1628.
 United States Court of Appeals,
Fourth Circuit.
 Argued: March 5, 1992
Decided: September 25, 1992
 H R CORPORATION, formerly known as Brewood Corporation, Claimant. Appeals from the United States District Court for the Eastern District of Virginia, at Alexandria. James C. Cacheris, Chief District Judge. (CA-90-1139-A)
 ARGUED: Abbe D. Lowell, Brand & Lowell, Washington, D.C., for Appellant.
 Robert Gerald Scott, Jr., Cole, Raywid & Braverman, Washington, D.C., for Appellee Jewett; Barbara S. Wahl, Arent, Fox, Kintner, Plotkin & Kahn, Washington, D.C., for Appellee Pohanka.
 ON BRIEF: Leslie T. Thornton, Susan B. Smith, Brand & Lowell, Washington, D.C., for Appellant.
 Burt A. Braverman, John D. Seiver, Cole, Raywid & Braverman, Washington, D.C., for Appellee Jewett; Jeanine M. Worden, Arent, Fox, Kintner, Plotkin & Kahn, Washington, D.C., for Appellee Pohanka.
 E.D.Va.
 Affirmed in part, vacated in part and remanded.
 Before ERVIN, Chief Judge, PHILLIPS, Circuit Judge, and MURRAY, Senior United States District Judge for the District of Maryland, sitting by designation.
 OPINION
 PHILLIPS, Circuit Judge:
 
 
 1
 In this diversity action, a partnership, 1108 K Street Associates (the partnership), sought to recover from Charles Jewett, a former partner, his alleged proportionate share of costs already and yet to be incurred by the partnership in remedying environmental damage to partnership property. Without reaching Jewett's liability vel non for these costs, the district court dismissed the partnership's complaint without prejudice to its later reassertion, on the basis that in view of a contingent hold-harmless agreement between the partnership and Jewett, the claim it made was premature. On the parties' appeal and cross-appeal challenging the dismissal and various interlocutory rulings, we affirm except with respect to the dismissal without prejudice and the award of attorney fees to Jewett. As to those, we conclude that the parties were entitled to a determination of the issue of Jewett's liability vel non for a share of the partnership's remediation expenses and that the award of attorney fees was premature. Accordingly, we vacate the dismissal and the attorney fee award and remand for further proceedings.
 
 
 2
 * In 1981, Charles Jewett, James Farr, and John Pohanka formed 1108 K Street Associates, a general partnership, for the purpose of acquiring, improving, and developing certain real property located at 1108 K Street, N.W., Washington, D.C. The partnership was reorganized as a limited partnership in 1983 and in 1983, Jewett, Farr, Pohanka, and a fourth party, Brewood, Inc., (now H R Corporation) entered into an Amended and Restated Limited Partnership Agreement (the "Amended LPA"), with Jewett, Farr, and Pohanka as both general partners and Class B limited partners, and Brewood as Class A limited partner.
 
 
 3
 The Amended LPA provides for the succession of each general partner's ownership interests upon his death, incompetency, bankruptcy, or retirement, and specifies that 1108 K Street Associates will not dissolve upon the retirement or death of a general partner if the remaining partners consent to continue the partnership. J.A. at 688 (Amended LPA p 7.2). The Amended LPA also provides specifically that "[u]pon the death, incompetency, bankruptcy or retirement of Charles A. Jewett, then James E. Farr shall, so long as he consents in writing, succeed to all of Charles A. Jewett's rights, interest and liabilities as a General Partner." J.A. at 663 (Amended LPA p 4.11(b)). Consistent with these provisions, Jewett, Farr, Pohanka, and Brewood entered into an agreement in December 1986 whereby Jewett retired from 1108 K Street Associates and assigned his interests in the partnership to Farr, and Pohanka, Farr, and Brewood, as 1108 K Street Associates' sole remaining partners, consented to the assignment and agreed to continue the business of the partnership after Jewett's retirement. J.A. at 753 (Assignment of Partnership Interests).
 
 
 4
 In October 1988, the partnership retained Briggs Associates, an engineering consulting firm, to perform an environmental site assessment of the 1108 K Street property. The assessment was a legal precondition to the partnership's proceeding with a planned office building development on the site. The partnership was aware that underground tanks for oil and gas storage had been installed on the property by former owners who had operated a gas station there. The Briggs Associates site assessment confirmed that leakage from these tanks had caused petroleum hydrocarbon contamination in the soil and groundwater at 1108 K Street. In 1989, the partnership retained Dames & Moore, another engineering consulting firm, to undertake remediation of the site. Dames & Moore had removed eight leaky underground storage tanks and 1300 tons of surrounding contaminated soil, at a cost of $161,000, before further remediation was halted by a flash fire at the site. Dames & Moore then gave the partnership a "conservative" cost estimate of $936,500 to complete remediation of both groundwater and soil pollution at the site. J.A. at 700. This figure did not include the more than $300,000 in cleanup costs already paid by the partnership to that date.
 
 
 5
 Following this development, the partnership demanded by letter that Jewett contribute his proportionate share of costs already and yet to be incurred by the partnership in remedying the environmental damage. J.A. at 539. Jewett never responded. The partnership and Farr then brought the present action seeking monetary damages in the amount of Jewett's proportionate share of costs, past, present, and future, incurred by the partnership in cleaning up the 1108 K Street site, the sum to be determined at trial.
 
 
 6
 Jewett in turn filed an answer and counterclaim against the partnership and Farr and a third-party complaint against Pohanka. He denied any liability for the costs of cleaning up the 1108 K Street site, alleging that his withdrawal from the partnership and the assignment to Farr had the effect of releasing Jewett from any and all liability he had or could ever have to the partnership. In the alternative, if found liable for a share of the remediation costs, Jewett sought indemnification from the partnership and contribution from Farr and Pohanka for any amount adjudged against him. In response to Jewett's third-party complaint, Pohanka counterclaimed for contribution from Jewett of Jewett's proportionate share of environmental remediation costs already incurred by the partnership and, like the partnership itself, sought a declaration of Jewett's liability for a proportionate share of past, present, and future cleanup costs.[1]
 
 
 7
 The fractious litigation that followed culminated in a flurry of cross motions for summary judgment. The district court disposed of them all by dismissing without prejudice the partnership's complaint (and Pohanka's claim) against Jewett. The court first found that Jewett was contingently entitled to indemnification by the partnership for any liability he might have for a share of the partnership remediation costs, under a provision in the Amended LPA that
 
 
 8
 Notwithstanding anything to the contrary contained herein, none of the General Partners shall have any liability to the Partnership or any of the Limited Partners unless caused by active negligence or willful misconduct with respect to their obligations contained herein. In the event that the Partnership is unable to hold any General Partner harmless from liability which was not caused by his own gross negligence or willful misconduct, the General Partners shall contribute to such liability in proportion to their percentage interests as General Partners.
 
 
 9
 J.A. at 661-62 (Amended LPA p 4.9). But then finding as a matter of law that the partnership was presently able to hold its general partners harmless from liability,[2] the court concluded that the partnership's claim against Jewett was for that reason premature. On that basis, the court declined to address Jewett's primary defense that he was not in any event liable as a former partner for any portion of the costs sought to be recovered, an issue it thought properly deferred for resolution until such time as the partnership could prove itself no longer able to hold Jewett harmless for any liability he might have. J.A. at 526, 537. The court therefore dismissed both the partnership's complaint and Pohanka's claim without prejudice, expressly noting that the partnership could reassert its claim against Jewett at such time as the partnership became no longer financially able to hold its general partners harmless from liability.
 
 
 10
 After the district court ruled that Jewett was entitled to indemnification until such time as the partnership was financially unable to indemnify him, the partnership sought an evidentiary hearing to establish that it was at that time financially unable to indemnify Jewett. The district court denied the request on the ground that it was made too late. The court reasoned that the partnership knew from Jewett's cross motion for summary judgment that he claimed a right to indemnification, at which time the partnership "was required to come forward with its evidence [of not being able to indemnify Jewett] or suffer summary judgment." J.A. at 537. The court then granted Jewett's motion for attorney fees, also pursuant to the indemnification provision in the Amended LPA,[3] LPA, but only those fees incurred by Jewett in defending against the action brought against him by the partnership, and not for those related to his own third-party claims against Farr, Pohanka, and Brewood, or for the defense of counterclaims pleaded in response to those claims. The court also denied Jewett's request for Rule 11 sanctions against the partnership and Pohanka.
 
 
 11
 This appeal and cross-appeal followed.
 
 
 12
 The partnership contends that summary judgment should have been granted in its favor on the basis of Jewett's liability to the partnership for a proportionate share of the remediation costs. It challenges as legal error the district court's conclusion that to the extent Jewett might be liable for a share of the partnership's remediation costs, the partnership was contingently liable under the Amended LPA to hold him harmless; and, in the alternative, it contends that if contingently liable, the court's determination of its present ability to indemnify was in any event improper because there were genuine issues of material fact respecting its present ability to do so. Finally, the partnership challenges the award to Jewett of attorney fees.
 
 
 13
 Jewett's cross-appeal challenges the "without prejudice" aspect of the district court order dismissing the complaints against him by the partnership and Pohanka. He contends that he was entitled to a final determination that being no longer a partner, he is not liable, now or ever, for a proportionate share of its remediation costs. Alternatively, he contends that in any event he is entitled under the Amended LPA to be held harmless by the partnership for any liability he has to it for the cost-share claimed and to that extent seeks affirmance of the court's ruling to that effect. Jewett also challenges the district court's denial of attorney fees incurred in prosecuting his third-party claims and defending the counterclaims filed in response to them, and the court's denial of Rule 11 sanctions.[4]
 
 II
 
 14
 We first address the primary issues on this appeal, those going to Jewett's liability to the partnership for a proportionate share of its remediation costs. To do so, we first summarize the way in which the issues were presented in the parties' cross-motions for summary judgment on the partnership's primary claim, and the way in which the district court resolved them.
 
 
 15
 The partnership's primary claim was that Jewett, though no longer a general partner, was yet liable to it for a share, proportionate to his former partnership interest, of the remediation costs for which the partnership was itself liable. Jewett's basic defense to this claim was two-fold: (1) as one no longer a partner, he was not liable for any part of this partnership liability; or (2) if he were, he was entitled under the Amended LPA to be held harmless by the partnership for any such liability, so long as the partnership was financially able to do so, and it presently was so able. To the second of these defenses, the partnership made a two pronged riposte: (1) the hold-harmless provision invoked by Jewett does not apply to claims by the partnership itself against a partner, but only to claims against partners by third-parties; or, if it does apply to partnership claims, it does not apply here because, under its terms, the partnership is not now financially able to hold Jewett harmless.
 
 
 16
 Though obviously interrelated, the issues and sub-issues thus joined were such as to provide either independent bases for final decision as to Jewett's liability, or at least for critical rulings (by "partial" summary judgment) on the way to final decision. Thus, if, as Jewett contended, he could not be held liable as a former partner under applicable law for any portion of the partnership's remediation costs, the partnership's primary claim would flatly fail on that basis, with no need to go further. If, on the other hand, it were determined that as a former partner he could nevertheless be liable, then the holdharmless issue would become critical. For if the hold-harmless provision were found not to apply to claims against partners by the partnership itself, as the partnership claimed, the issue of Jewett's liability vel non as a former partner would then become dispositive. If, on the other hand, it were determined that the hold-harmless provision applied, but by its terms only contingently, then the contingency of financial ability would become critical.
 
 
 17
 Faced with these interrelated issues, the district court had a number of options for addressing them. The most fundamental issue, the only one whose resolution could independently decide the case was that of Jewett's liability vel non. If decided in his favor, that would finally decide the case against the partnership. And though decision against Jewett on that issue, or decision either way on any of the other issues would not be dispositive, they might helpfully advance the litigation toward final resolution.
 
 
 18
 The court's solution was to address on the merits only the issue of Jewett's present entitlement to be held harmless, assuming he was liable to the partnership in the first place, and to finesse for the present the more fundamental issue of his liability vel non. This it did by deciding (1) that the hold-harmless provision did apply to claims by the partnership, and specifically to the claim here at issue, so long as the partnership was financially able; and that (2) the partnership was presently able to hold Jewett harmless, thereby satisfying the contingency for its present obligation; so that (3) though it might later become financially unable, thereby relieving it of the obligation, its present ability made its action against Jewett now premature, whether or not he is otherwise liable for contributing to the partnership, requiring (4) that the partnership's complaint (and Pohanka's derivative claim) be dismissed without prejudice to later reassertion.
 
 
 19
 Three essential rulings are thus involved and are challenged by the parties in the various ways indicated: (1) that the hold-harmless provision in the Amended LPA does apply to such claims as that made here by the partnership against Jewett; (2) that, as a matter of law on the undisputed facts of record, the partnership is presently obligated under that provision to hold Jewett harmless as to its claim against him, because it has the present financial ability to do so; and (3) that the resulting prematurity of the partnership's claim warrants dismissal of the partnership's (and Pohanka's) complaints without prejudice to their later reassertion.
 
 
 20
 We take these in order.
 
 
 21
 * Partnership law in the District of Columbia, the jurisdiction where the partnership was formed and whose law was chosen by the partnership as governing, makes the rights and duties of partners to a partnership "subject to any agreement between them." D.C. Code Ann. § 41117. The agreement here, the Amended LPA, explicitly provides that the general partners "shall not be liable for, and the Partnership hereby indemnifies and agrees to save harmless the General Partners against, any claims arising out of the activities and operations of the Partnership." J.A. at 661 (Amended LPA p 4.9). The partnership contends that this provision only obligates it to hold its general partners harmless against claims brought by outside parties, not against claims brought by the partnership itself.
 
 
 22
 Nothing in the text of the agreement suggests any such limitation. On the contrary, as the district court held, by the literal terms of the agreement general partners are contingently entitled to be saved harmless by the partnership against any claims arising out of the activities and operations of the partnership. We agree with the district court that this language is facially unambiguous and in terms applies not only to third-party claims but to claims against partners by the partnership itself. Nothing suggests that this does not include claims by the partnership for partner contributions to meet partnership obligations such as that in issue here. As to such claims, the practical effect of the agreement is that the partnership is not entitled to such partner contributions so long as it has the financial ability from its own resources-partnership assets or credit-to discharge the obligations.[5] Accordingly, we affirm the district court's summary adjudication that if Jewett is liable as a former partner to contribute a proportionate share of the remediation costs, he is also entitled by virtue of that status to be held harmless as to that liability so long as the partnership has the financial ability to do so.
 
 B
 
 23
 We next address the district court's ruling that the partnership was presently financially able to fund the remediation costs, hence remained obligated to hold Jewett harmless against its own claim for contribution of a share of those costs as a former partner.
 
 
 24
 As indicated, this ruling was made on the parties' cross-motions for summary judgment on the primary liability claim against Jewett. In its response to Jewett's motion raising the hold-harmless defense to that claim, the partnership initially relied only on its contention that the hold-harmless provision applied only to third-party claims. Having ruled against the partnership on that point, the district court then ruled further that on the undisputed facts-as presented by Jewett-the partnership was financially able, hence obligated under the provision, to hold Jewett harmless against its claim.
 
 
 25
 Following this ruling, the partnership belatedly requested reconsideration and an evidentiary hearing on its financial ability to hold Jewett harmless against its claim. The district court denied the request.
 
 
 26
 On the partnership's challenge to that ruling, we cannot hold it an abuse of discretion. As the district court rightly noted, the partnership was on fair notice by Jewett's cross-motion that its obligation under the hold-harmless provision had been asserted, and that resolution of the motion might turn not only on the legal issue of the provision's general coverage, but on the specific factual question of its financial ability. Under basic summary judgment principles, it was then incumbent upon the partnership to demonstrate that there was a genuine issue of material fact respecting its financial ability. Williams v. Griffin, 952 F.2d 820, 823 (4th Cir. 1991). When it did not do so, the district court properly concluded-based on Jewett's undisputed proffers of evidence-that the partnership was financially able to hold Jewett harmless.
 
 
 27
 Under the circumstances, the district court did no more than hold the partnership to the basic requirement of summary judgment procedure in declining to reconsider its properly supported ruling. Because in doing so it acted well within its discretion, the ruling stands.
 
 C
 
 28
 We next consider the district court's most critical ruling-that because of its prematurity, the partnership's complaint (and with it Pohanka's claim) should be dismissed without prejudice, thereby avoiding for the time being the question of Jewett's liability as a former partner for a proportionate share of partnership expenses. Though the district court did not discuss the matter in these terms, its ruling is best assessed as one invoking ripeness doctrine.
 
 
 29
 In its more complex forms, that doctrine is one of extreme complexity-rooted in fundamental constitutional and prudential concerns of justiciability. See generally 13-A C. Wright, A. Miller and E. Cooper, Federal Practice & Procedure: Jurisdiction and Related Matters §§ 3532 et seq.
 
 
 30
 We need not explore those complexities in any depth in this case which presents none of the special difficulties that attend its application in cases involving constitutional adjudications, state-federal relations, pre-enforcement review of agency regulations and the like. This case presents the ripeness question in one of its simplest, most mundane forms: whether because of future contingencies and uncertainties that may or may not forever preclude recovery on a private law claim, a court should stand aside and decline to adjudicate a defense to the claim which, if established, would surely and finally bar it without awaiting uncertain future developments.
 
 
 31
 Here the district court stood aside by drawing on the hold-harmless provision that presently would preclude recovery by the partnership. In this situation, as in more complicated ones, the question of ripeness should turn on "the fitness of the issues for judicial decision" and "the hardship to the parties of withholding court consideration." Pacific Gas & Elec. Co. v. State Energy Resources Conservation & Dev. Com., 461 U. S. 190, 201 (1983) (quoting from Abbott Laboratories v. Gardner, 387 U.S. 136, 148-49 (1967)). While ripeness determinations applying such a test inevitably involve an element of discretion, see id. § 3532.1 at p.121, whose exercise by a trial court is entitled to appropriate appellate deference, we are satisfied that the decision here cannot stand.
 
 
 32
 The issues in the case-all of them, including Jewett's primary defense of non-liability as a withdrawn partner-were fit for decision in the justiciability sense. Certainly they presented no constitutional justiciability issues. The partnership actually had sought a declaratory judgment on the issue of Jewett's liability vel non, thereby relaxing to some extent the normal concerns of justiciability. Significantly, both parties complain about the court's refusal to address this issue. While not decisive, their joinder in desire for adjudication bears upon the fitness question. The only consideration against addressing it, with possibly dispositive results, is the circumstance always present where ripeness questions occur, that the issue finessed is one that in the end may never require adjudication.
 
 
 33
 To assess the significance of that consideration here requires turning to the second question in ripeness analysis: the hardship to the parties of withholding court consideration of this potentially dispositive issue. We think the hardship here substantial enough-as to both of the principal parties-that it is the dominant consideration. So long as Jewett's liability vel non remains undecided, the partnership is unable to lay firm plans for taking care of the remediation costs. On the other side, leaving the question open exposes Jewett to continued uncertainty as to his potential liability. As a matter of judicial administration, leaving the parties in limbo in the way done exposes the court to the prospect of successive abortive reassertions by the partnership of its claim.
 
 
 34
 True, resolution of the issue will not necessarily relieve the full uncertainty. If Jewett were found liable as a former partner, the unresolved indemnification contingency might still prevent full and final resolution. Nevertheless, even that non-dispositive ruling might move the controversy closer to final resolution by private settlement, for another element of uncertainty about the parties' legal relationships in this matter will have been removed. Again, though it is not decisive, the shared desire of the parties to have the fundamental liability question decided (though obviously in opposite directions) points up the hardship that each feels in the present situation.
 
 
 35
 For these reasons, we conclude that the district court erred in dismissing the partnership's complaint on grounds of prematurity. The parties are entitled to what both seek, a present adjudication of the fundamental issue of Jewett's liability vel non as a former partner.
 
 
 36
 While both parties urge us to decide that issue in their favor on this appeal, we are not in a position to do so. It should be addressed in the first instance by the district court. Not only are there unaddressed questions of contract interpretation and statutory partnership law arguably involved in its resolution, there may be questions of federal environmental law and disputed questions of fact respecting the origination of the partnership's obligation for remediation costs.
 
 
 37
 Accordingly, we will vacate the dismissal without prejudice and remand for first instance consideration of the issue of Jewett's liability as a former partner. Obviously in the course of those further proceedings, the question of the partnership's present ability to hold Jewett harmless for any liability found could also be raised and addressed as events might dictate.
 
 III
 
 38
 We address finally the parties' cross-assignments of error respecting the award of attorney fees to Jewett, and the district court's refusal to award sanctions against the partnership as sought by Jewett.
 
 
 39
 * As indicated, the district court awarded Jewett attorney fees attributable to his defense of the partnership's claim against him, but denied his request for fees attributable to the prosecution of his thirdparty claims. The partnership challenges the award of any fees; Jewett, the court's refusal to award all sought.
 
 
 40
 We think the district court's award of any attorney fees under the indemnification provision in the Amended LPA was premature. As indicated in Part I, the district court's holding that Jewett was entitled to invoke the indemnification/hold-harmless provision against the partnership was on the express assumption that Jewett was liable to the partnership as a former partner for a proportionate share of its costs. See J.A. 526 (prematurity ruling based on court's assumption "arguendo, that a former partner such as Jewett could be held liable"). Our affirmance of that ruling was on the same assumption. If, however, Jewett is found not liable as a former partner, we do not believe that he properly can invoke the indemnification provision-which of course runs only to general partners-for this collateral purpose. If he is not liable as a partner, neither should he be entitled to indemnification as a partner under the partnership agreement whose obligations he will have escaped. Accordingly, we think that Jewett's entitlement to attorney fees in any amount under this provision must await final judgment on the merits of the partnership's claim.
 
 
 41
 Accordingly, we will vacate the award of attorney fees without prejudice to its reconsideration when and if that becomes appropriate in light of this opinion.
 
 B
 
 42
 The district court denied Jewett's motion for Rule 11 sanctions against the partnership. We agree with the district court that sanctions were not warranted under the provisions of that Rule.
 
 IV
 
 43
 In sum, we affirm the district court's ruling that if Jewett is liable as a former partner to contribute to the partnership a proportionate share of its remediation costs, he is also entitled to the protections of the indemnification/hold-harmless provision of the Amended LPA; the court's summary adjudication that the partnership was presently bound by reason of its financial ability to hold Jewett harmless for any liability he might have to the partnership on its claim; and the court's refusal to award Rule 11 sanctions against the partnership. We vacate, as premature, the court's award of attorney fees to Jewett under the Amended LPA's indemnification provision; and we vacate the court's dismissal without prejudice of the partnership's complaint (and Pohanka's claim) and remand the cause to the district court for further proceedings consistent with this opinion.
 
 SO ORDERED
 
 
 [1]
 Jewett also filed a third-party complaint seeking contribution from Brewood based on the corporation's limited partnership interest in the 1108 K Street property. In response, Brewood denied liability and filed a fourthparty complaint against Margaret Held, Roger Thiel, James Farr, John Doe, and John Doe Corporation, alleging that these entities were also liable for contribution by virtue of their limited partnership interests in the property, and Brewood cross-claimed against the partnership and its general partners, Farr and Pohanka, on similar grounds
 This third- and fourth-party portion of the litigation, and the parties to it other than Jewett, are not involved in this appeal. Neither is Farr a party to the appeal. The court dismissed Farr as a party plaintiff on Jewett's Rule 12(b)(6) motion, and Jewett then voluntarily dismissed his counterclaim against Farr.
 
 
 [2]
 The court reached this conclusion based on an undisputed proffer of evidence that the partnership had been able to obtain loan financing for its operations in the past, and that there was no evidence in the record that the partnership could not obtain such financing in the future. The Amended LPA contemplates the partnership's obtaining funds needed for its operations through borrowing, J.A. at 652 (Amended LPA p 2.3), and only as a last resort from the assets of the general partners, id. at 655 (Amended LPA p 4.1(B))
 
 
 [3]
 [T]he Partnership hereby indemnifies and agrees to save harmless the General Partners against ... any claims arising out of the activities and operations of the Partnership, including ... all judgments, fines, amounts paid in settlement and reasonable expenses, including attorneys' fees, actually incurred by them as a result of such claims
 J.A. at 661 (Amended LPA p 4.9) (emphasis added).
 
 
 [4]
 Pohanka, as appellee, seeks affirmance of the district court's dismissal of his separate claim against Jewett without prejudice, but also seeks to challenge several rulings that he considers adverse to his interest. Because he did not cross-appeal, we decline to consider the challenges which, if successful, would "lessen" those aspects of the judgment favorable to Jewett, and "enlarge" those favorable to Pohanka. See United States v. American R. Express Co., 265 U.S. 425, 935 (1924). The practical effect of this limitation on our review is, however, at most negligible, since the partnership has properly presented essentially the same challenges Pohanka seeks to make
 
 
 [5]
 Though under applicable partnership law, D.C. Code Ann. § 41-117, such a side agreement may properly control the legal relationships between a partnership and its partners respecting partnership obligations (typically by indemnification agreements), it obviously cannot and does not purport to affect the rights of third parties as against either partnership or partners-including former partners. As to these, D.C. Codes 41-114(2), as does partnership law generally, provides for joint liability of all partners for "all other debts and obligations of the partnership [in addition to those arising from wrongful acts and breaches of trust by partners]." To hold that the indemnification agreement here applies to partnership claims against partners as well as to outsider claims therefore does not, as the partnership seems to argue, somehow "subjugate" or trump the statutory provisions imposing liability on partners for partnership obligations to outsiders